Filed 6/10/15  P. v. Lewis CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TERRELL LEWIS,<br><br>    Defendant and Appellant. | B255401<br><br>(Los Angeles County<br> Super. Ct. No. TA127199) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Paul A. Bacigalupo, Judge.  Affirmed as modified.

Law Offices of James Koester and James Koester, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Marc A. Kohm and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Terrell Lewis of assaulting a police officer with a deadly weapon and by means of force likely to produce great bodily injury (§ 245, subd. (c)) and resisting a police officer (§ 69).[1, 2] Defendant, a member of the Bounty Hunter Bloods gang, committed the two crimes when he attempted to prevent Detective Christian Mrakich from serving him with a subpoena to testify at a fellow gang member's trial.

In a subsequent bench trial, the court found true the allegations that defendant had suffered a prior conviction within the meaning of sections 1170.12, subdivisions (a)-(d), 667, subdivisions (a)-(i) and section 667.5, subdivision (b).[3] The trial court sentenced defendant to a 13-year term.

In this appeal, defendant contends that there is insufficient evidence to sustain his conviction for felonious assault; that the trial court committed instructional error; and that the trial court erred when it permitted the People to present limited evidence about his gang affiliation. We find no prejudicial error. In addition, defendant asks us to review the sealed transcript of the in camera hearing conducted on his *Pitchess* motion.[4] Lastly, defendant raises two minor claims of sentencing error, both of which the Attorney General concedes. Other than directing preparation of a modified abstract of judgment to correct the sentencing errors, we affirm the judgment.

---

[1]   All undesignated statutory references are to the Penal Code.

[2]   Defendant was also charged with battery on a peace officer with injury (§ 243, subd. (c)(2)) but the prosecution dismissed that count during trial.

[3]   The prior conviction was based on defendant's plea of nolo contendere, entered in 2008, to the charge that he violated Health and Safety Code section 11351.5 (possession of cocaine base for sale) and his admission that the crime was committed to benefit a criminal street gang (§ 186.22, subd. (b)(1)(A).)

[4]   *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

2

# STATEMENT OF FACTS

## A.  THE PROSECUTION'S CASE

1.  *Events Prior to Defendant's Commission of the Crimes on February 13, 2013*

In May 2011, defendant was shot twice with "an AK-47 style, assault rifle." Detective Mrakich of the Los Angeles Police Department (LAPD) was assigned to investigate the shooting.  The detective visited defendant in the hospital while he was recovering from his wounds and asked if defendant could identify the shooter. Defendant, a member of the Bounty Hunter Bloods gang, declined to identify the man, stating that he could not be known "as a snitch" "or someone who cooperates with the police."  Defendant did, however, give Detective Mrakich a physical description of the shooter.  Detective Mrakich explained to defendant that if the police identified the shooter, he would be required to testify at the shooter's trial.

Although Detective Mrakich and defendant had an "amiable" relationship at first, defendant became uncooperative as the investigation of his shooting proceeded.

Several months later, the police identified Israel Jauregui, also a Bounty Hunter Bloods member, as the shooter.  Jauregui matched defendant's physical description of the shooter.  Detective Mrakich determined that "the shooting was a result of an internal feud between factions within the gang."  In August 2011, the police arrested Jauregui.

Detective Mrakich's duties as a police officer include serving subpoenas on witnesses.  Consequently, in October 2011, he served defendant with a subpoena requiring him to appear at Jauregui's preliminary hearing.  Defendant failed to appear.  Another preliminary hearing was scheduled.  Detective Mrakich again personally served defendant with a subpoena to appear at the preliminary hearing.

3

Again, defendant failed to appear and the magistrate issued a body attachment. The police were unable to locate defendant. Notwithstanding defendant's failure to appear, Jauregui was held to answer and a trial was set on the charge(s) against him.

By this time, defendant's phone number had been disconnected and he had moved out of his home. Detective Mrakich eventually learned that defendant was living at his mother's residence.

### 2. *The Events of February 13, 2013*

On February 13, 2013, Detective Mrakich intended to serve defendant with a subpoena to appear at Jauregui's upcoming trial. He and Detective Asia Hodge, both in plain clothes, drove in Detective Mrakich's personal and unmarked vehicle to the home of defendant's mother. (Defendant had previously seen Detective Mrakich's car two or three times.) Detective Mrakich intended to "knock on the door and hand him [defendant] a subpoena." Detective Mrakich asked Officers Francis Coughlin and Sharon Kim, both in uniform, to accompany him in a standard black and white police vehicle. Detective Mrakich testified that he made this request so that "there's no mistaking me for an enemy or rival[,]" "it's just a safe practice, especially being in plain clothes, to have a uniform presence with you at all times" when serving a subpoena.

Detectives Mrakich and Hodge arrived first and parked a few houses away from the home of defendant's mother. Within "a matter of a couple of minutes," defendant drove right past the driver's side of Detective Mrakich's parked vehicle. Because defendant did not stop at his mother's home, Detective Mrakich pulled away from the curb and followed him. Defendant immediately sped up, ran a stop sign, and made several turns. Detective Mrakich continued to follow him.

4

Detective Mrakich radioed Officers Coughlin and Kim to stop defendant because he intended to serve him with the subpoena. Detective Mrakich believed that he could lawfully order the brief detention of defendant's vehicle to serve the subpoena.

Officer Coughlin drove his marked police vehicle ahead of Detective Mrakich's car, activated the lights and sirens on it, and pulled defendant over. Officer Coughlin approached and ordered defendant out of his car. He refused. The two argued. Defendant said: "Fuck you. Fuck you. I want my lawyer. I want to call my lawyer." Because defendant had not complied with his request to exit his vehicle, Officer Coughlin opened the driver's car door. Defendant asked "What did I do?" and stated he intended to contact his attorney on his cell phone. Officer Coughlin told defendant to put the cell phone down and step out of the car.

Meanwhile, Detectives Mrakich and Hodge had arrived and heard the exchange between defendant and Officer Coughlin. In an effort to defuse the situation, they left their vehicle and approached. Detective Mrakich wanted "to make sure [defendant] knew [he] was there." Detective Mrakich walked up to defendant's car and excused Officer Coughlin, telling him "I'll handle this" and "Remember, we're here for the subpoena service." Defendant asked: "What did I do?" Detective Mrakich replied "Nothing. Don't worry."

Detective Mrakich, holding the subpoena in his left hand, told defendant: "Terrell, it's time. We've got to do this." Defendant replied: "Fuck no. Fuck, I ain't going to court." Detective Mrakich testified that the following then occurred. Defendant "made a quick movement towards . . . his lower right side." Detective Mrakich reached in and grabbed defendant. Defendant's car started to move and the detective felt his feet "moving really fast." He tried to pull his arm out of the car but his "hand snagged either in the seat belt or [defendant's] jacket. . . . [B]y that time the car [was] moving really fast" and he was "still hanging on."

5

Defendant's car "end[ed] up going faster than [he could move] and running over [his] right foot[,]" injuring him.

Defendant drove off but Officers Coughlin and Kim apprehended him shortly thereafter.

A dashboard camera on Officer Coughlin's police vehicle recorded video and audio of the incident that followed his stop of defendant. The recording was played for the jury.[5] The video shows the following 10-second sequence.

Detective Mrakich walks up to the driver's side of vehicle. The driver's door is open. The detective reaches inside with his left arm and hands the subpoena to defendant. Defendant begins to drive away. Detective Mrakich's right arm reaches inside of the car. Defendant drives faster. Detective Mrakich has both arms inside the car as he runs to keep up with it. Soon, he frees his arms from the vehicle's interior. The car door closes. Defendant continues to drive away. Detective Mrakich holds onto the moving car. He runs alongside it and attempts to reopen the driver's door. Defendant increases the car's speed, throwing the detective from it. During these events, the subpoena is thrown from the car and blown a short distance.

3. *Gang Evidence*

Detective Erik Shear was called as a gang expert to establish defendant's motive for attempting to avoid service of the subpoena.[6] He testified as follows.

---

[5]    On our own motion, we have augmented the record to include the video. (Cal. Rules of Court, rule 8.155(a)(1)(a).)

[6]    One of defendant's contentions is that the trial court committed prejudicial error in allowing this testimony. We set forth the basis of the trial court's ruling later when we discuss the claim of error.

The Bounty Hunter Bloods gang is a "huge" gang, with 800 to 900 members, in "a small area," primarily the Nickerson Gardens housing projects. Because the gang is so large and concentrated in a small area, "it's very common for them to have internal conflicts and even murder each other." The detective routinely investigates crimes committed by the Bounty Hunter Bloods such as assault, shootings, robbery, attempted murder and murder.

Both defendant and Jauregui are members of the Bounty Hunter Bloods. When one member of the Bounty Hunter Bloods shoots another member of the gang, the victim would "almost never" cooperate with a police investigation. A member who did cooperate would be considered a "snitch." Detective Shear explained: "It's almost beneficial to their status if they were a victim of a crime and they still refused to go to the police. Everybody knows they're solid [because] [t]hey're not going to snitch."

## B.  THE DEFENSE CASE

Defendant did not testify on his own behalf.

The defense offered two witnesses.

The first witness was Thomas Maeweather, a retired captain from LAPD who testified as an expert witness in police procedure. Maeweather testified that while there is "no specific [LAPD] policy that says [the police] can stop a car to serve a subpoena," there is no specific policy "that says an officer cannot . . . pull a person over to serve a subpoena." Maeweather conceded that officers do stop cars to serve the driver with a subpoena and that he had never disciplined an officer for "pulling over a vehicle" to serve a subpoena.

The second defense witness was Mary Thomas, defendant's mother. She testified about Detective Mrakich's visit to defendant's hospital room after he had

7

been shot by Jauregui and the detective's subsequent service of a subpoena to appear at Jauregui's preliminary hearing.

## DISCUSSION

### A. SUFFICIENCY OF THE EVIDENCE TO SUSTAIN THE FELONIOUS ASSAULT CONVICTION

Defendant first contends that there is insufficient evidence to sustain his conviction for felonious assault upon Detective Mrakich.[7]  We disagree.

An assault is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."  (§ 240.)  A defendant violates section 245, subdivision (c) when "(1) an assault with a deadly weapon or instrument or [by] means likely to produce great bodily harm (2) is committed upon the person of a peace officer (3) with knowledge or under such circumstances that a reasonable person would know that the victim is a police officer engaged in the performance of his duties (4) when such peace officer is in fact engaged in the performance of his duties." (*People v. Gaines* (1966) 247 Cal.App.2d 141, 145.) The offense is a general intent crime.  It "does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur.  Rather, assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." (*People v. Williams* (2001) 26 Cal.4th 779, 790 (*Williams*).)

---

[7]  Defendant does not attack the sufficiency of the evidence to sustain his conviction for resisting an executive officer.

Viewing the evidence in the light most favorable to the judgment (*People v. Johnson* (1980) 26 Cal.3d 557, 575-578), we conclude that substantial evidence supports defendant's conviction.

To begin, defendant knew at the time of the assault that Detective Mrakich was a peace officer performing his duties. Defendant had met Detective Mrakich in his official capacity as a peace officer on three previous occasions. The first occasion was when Detective Mrakich interviewed him in the hospital after he had been shot by Jauregui. The second and third occasions were when Detective Mrakich served him with subpoenas to appear at Jauregui's preliminary hearings. Further, defendant knew that Detective Mrakich was performing an official duty. After he (defendant) had been stopped by a marked police vehicle and approached by two uniformed police officers, Detective Mrakich came up to him. Holding the subpoena in his hand, Detective Mrakich told defendant: "Terrell, it's time. We've got to do this." Defendant's response ("Fuck no. Fuck, I ain't going to court") indicates that he understood that Detective Mrakich was serving him with a subpoena.

Further, defendant's use of a moving vehicle to commit the crime constituted the use of a deadly weapon or force likely to produce great bodily injury. (See *People v. Wright* (2002) 100 Cal.App.4th 703, 706 ["A]ny operation of a vehicle by a person knowing facts that would lead a reasonable person to realize a battery will probably and directly result may be charged as an assault with a deadly weapon."].)

According to defendant, the crux of the matter is whether the record contains substantial evidence of the required intent. He relies upon the video taken from the dashboard camera to suggest that, as a matter of law, the evidence did not establish his intent. He argues that the video "clearly shows that [Detective Mrakich] actually had freed himself from the car but then purposefully reengaged with the

9

car when he tried to reopen the driver's door. Only after he reengaged did he fall and injure himself." From that, defendant claims that Detective Mrakich's injuries were "not a reasonably expected consequence of [defendant's] initial decision to drive away from the location, but rather the direct result of Mrakich's purposeful attempt to reengage with [defendant's] car." We are not persuaded.

For one thing, defendant's argument overlooks the fact that the video shows that he began to drive off *as soon as* Detective Mrakich had reached in with his left arm to hand him the subpoena. After the vehicle began to move, the detective placed his right arm in the car. Defendant continued to drive. The detective was able to remove both arms from inside the vehicle but then hung onto the moving car. Detective Mrakich attempted to reopen the door; defendant drove faster; and the detective was injured.

A defendant is guilty of assault "if a reasonable person, viewing the facts known to defendant, would find that the act would directly, naturally and probably result in a battery." (*Williams, supra,* 26 Cal.4th at p. 788, fn. 3.) Here, a reasonable person knowing what defendant knew—Detective Mrakich (who had already twice served him with a subpoena) was attempting to serve a subpoena with his arm inside of the car —would also know that if he started to drive away at that moment (an intentional act), this act could directly, naturally and probably result in an application of force against Detective Mrakich because the detective would attempt to restrain defendant but be unable to keep up with the speed of the car.[8] In this context, the fact that Detective Mrakich attempted to reopen the car door after he had freed his arms from the car's interior is not significant. The

---

[8] Pursuant to defendant's request, the trial court submitted CALCRIM No. 3404 ("Accident") that explained that defendant was not guilty if he acted accidentally.

dispositive point is that defendant started to drive off as soon as Detective Mrakich reached inside to serve the subpoena.

## B.  INSTRUCTION ON A MISTAKE OF FACT DEFENSE

Defendant contends that the trial court committed prejudicial error when it rejected defense counsel's request to instruct on the defense of mistake of fact.  We find no error.

### 1. *Factual Background*

Defense counsel asked the trial court to submit CALCRIM No. 3406 ("Mistake of Fact") to the jury.  He argued that the evidence raised a question whether defendant recognized Detective Mrakich as a police officer when he walked up to him and attempted to serve him.  The trial court rejected the request, finding that it was undisputed that defendant knew who Detective Mrakich was.

### 2. *Discussion*

A defendant is entitled to a jury instruction on an affirmative defense if the record contains substantial evidence — evidence sufficient for a reasonable jury to find in favor of defendant — to support the defense.  "In determining whether the evidence is sufficient to warrant a jury instruction, the trial court [decides] only whether 'there was evidence which, if believed by the jury, was sufficient to raise a reasonable doubt . . . .'" (*People v. Salas* (2006) 37 Cal.4th 967, 982.)  But if the evidence of the purported defense is minimal or insubstantial, there is no duty to instruct on it.  (*People v. Barnett* (1998) 17 Cal.4th 1044, 1145.)

Here, nothing in the People's case suggested that defendant did not know Detective Mrakich.  To the contrary, the evidence established clearly that defendant did know the detective.  Detective Mrakich testified that he had visited

11

defendant in the hospital where they discussed the Jauregui shooting and that on two separate occasions he later served defendant with a subpoena to testify at Jauregui's preliminary hearing. Further, Detective Mrakich testified that prior to February 13, defendant had seen the car that he used that day. Defendant's failure to stop his vehicle at his mother's house after he drove past Detective Mrakich's parked car is evidence that defendant had immediately recognized the detective, as is the fact that once Detective Mrakich began to follow him, defendant sped up, ran a stop sign, and made several turns, all in an apparent attempt to evade the detective. In addition, defendant's response when Detective Mrakich attempted to serve him indicated that he recognized the detective and knew the reason for his presence. Consequently, the mere fact that Detective Mrakich was in plain clothes when he walked up to defendant—after defendant had first been stopped by a marked police vehicle that had activated its lights and siren and then been approached by two uniformed police officers—did not constitute substantial evidence warranting submission of CALCRIM No. 3406.

Further, the defense failed to present any evidence that defendant did not recognize Detective Mrakich. Defendant did not testify and neither of the two defense witnesses had observed the operative events. In sum, the record did not contain substantial evidence that could persuade a reasonable jury to entertain a reasonable doubt whether defendant recognized Detective Mrakich. (See, e.g., *People v. Kanawyer* (2003) 113 Cal.App.4th 1233, 1243.) The trial court therefore did not err in declining to instruct on the defense.

For the first time on appeal, defendant argues that the trial court "failed to recognize that there was substantial evidence that [he] may have been reasonably reacting to another mistake of fact, that this was a consensual encounter from which he was free to leave, when there was no evidence that either [Officer] Coughlin or [Detective] Mrakich explained the purpose of his detention and

12

[Detective] Mrakich specifically told [him] that he hadn't done anything wrong." We disagree. After violating several provisions of the Vehicle Code, defendant stopped his car after Officer Coughlin had activated the lights and siren on his marked police vehicle. When Officer Coughlin approached defendant, he told defendant several times to step out of his car. This instruction is the antithesis of a consensual encounter. Defendant failed to comply with the instruction but, instead, argued with the officer. Detective Mrakich approached and essentially told defendant that he had been stopped so he (the detective) could serve him with a subpoena. Defendant's response indicated that he understood the purpose of the stop. Nothing in the defense case contradicted or rebutted this evidence. In sum, nothing in the record raised a reasonable doubt that defendant believed the stop was consensual.

## C.  FAILURE TO INSTRUCT ON
## A NECESSARILY LESSER INCLUDED OFFENSE

Defendant contends that the trial court committed prejudicial error when it rejected his request to instruct on resisting an officer (§ 148), which he claims is a necessarily lesser included offense to resisting an executive officer (§ 69). We are not persuaded.

1. *Legal and Factual Background*

Section 69 can be violated in one of two ways. The first way is when the defendant "attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law." (§ 69.) The second way is when the defendant "knowingly resists, by the use of force or violence, such officer, in the performance of his duty." (§ 69.) In this case, the information, which was read to the jury at the beginning of trial, alleged both ways in the conjunctive.

13

Section 148 is violated when the defendant "willfully resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any duty of his . . . office or employment."  (§ 148, subd. (a)(1).)  Unlike section 69, section 148 does not include the element of the use of force or violence.

Section 148 is not a necessarily lesser included offense of the first way to violate section 69:  attempting to deter, by threat or violence, an officer from performing his executive duty.  (*People v. Smith* (2013) 57 Cal.4th 232, 243 (*Smith*).)  However, section 148 is a lesser included offense of the second way to violate section 69:  knowingly *resisting*, by force or violence, an officer who is performing his duty.  (*Id*. at p. 241.)

When the parties discussed jury instructions, the prosecutor asked only for the submission of CALCRIM No. 2651 which explains the elements of the first way to violate section 69.  He did not ask for submission of CALCRIM No. 2652 which explains the elements of the second way to violate section 69.  Nonethless, defense counsel requested submission of an instruction about section 148 (presumably CALCRIM No. 2656) even though one of the Bench Notes to CALCRIM No. 2651 explains:  "Resisting an officer, Penal Code section 148(a), is not a lesser included offense of attempting to deter an officer.  [Citation.]"  The trial court denied the defense request, stating section 148 was not a lesser included offense.

The court thereafter instructed the jury as follows:

"The defendant is charged in Count three with trying to prevent or deter an executive officer from performing that officer's duty.

"To prove that the defendant is guilty of this crime, the People must prove that:

14

"1.  The defendant willfully and unlawfully used violence to try to prevent or deter an executive officer from performing the officer's lawful duty; AND

"2.  When the defendant acted, he intended to prevent or deter the executive officer from performing the officer's lawful duty.

"Someone commits an act willfully when he or she does it willingly or on purpose.

"An executive officer is a government official who may use his or her own discretion in performing his or her job duties.  A Los Angeles Police Officer is an executive officer.

"The duties of a police officer include serving subpoenas.

"A peace officer is not lawfully performing his or her duties if he or she is unlawfully arresting or detaining someone or unlawfully serving a subpoena in his or her duties."

In his closing argument, the prosecutor made only brief mention of section 69, characterizing it as defendant's attempt through the use of force to deter Detective Mrakich from lawfully performing his duty of serving the subpoena.

2.  *Discussion*

Defendant contends that the trial court was required to instruct about section 148 because *Smith, supra,* 57 Cal.4th 232 held such an instruction is required when the accusatory pleading alleges both ways in which section 69 can be violated.  (*Id.* at pp. 242-243.)  Here, as stated earlier, the information did allege both manners of violating section 69.  However, the prosecutor effectively abandoned that approach when he requested submission of only CALCRIM No. 2651.  That the information was not formally amended at the end of trial to reflect that the prosecutor had

15

elected to proceed only on one theory of violating section 69 could not have prejudiced defendant or entitled him to an instruction on section 148.

In any event, assuming arguendo that the language of the information exclusively governs the trial court's obligation to instruct, *Smith, supra,* still does not support defendant. *Smith* qualified its holding by reiterating: "[A] trial court is not required to instruct the jury on a necessarily included lesser offense '"when there is no evidence that the offense was less than charged."'" [Citation.]" (*Smith, supra*, 57 Cal.4th at p. 245.) That is this case.

Here, defendant physically resisted Detective Mrakich's attempt to serve the subpoena by driving away, resulting in his car running over the detective's foot. The defense theory, as set forth in closing argument, was that it was an accident. Thus, defendant either willfully used violence intending to prevent Detective Mrakich from performing his duty and was guilty of violating section 69 or he lacked that intent and was not guilty of violating section 69. There was no evidence that defendant committed only the lesser offense of resisting Detective Mrakich *without the use of force or violence* in violation of section 148, subdivision (a)(1). The trial court therefore had no duty to instruct on that latter offense. (*Smith, supra,* 57 Cal.4th at p. 245.)

### D.  ADMISSION OF GANG EVIDENCE

Defendant contends that his trial was "fundamentally unfair" because the prosecution "introduce[d] unfairly provocative and cumulative evidence related to the Bounty Hunter Bloods." We disagree.

1. *Factual Background*

The information alleged that defendant committed the charged offenses to benefit a gang.  (§ 186.22.)  Prior to trial, the defense moved to bifurcate the trial

16

on the charged crimes from the trial on the gang enhancement.  The trial court granted the motion.  It found that allowing the People to introduce evidence that the crimes were committed to benefit a gang within the meaning of section 186.22 and to establish the predicate offenses would unduly prejudice the defense on the charged crimes.[9]  However, the trial court granted the prosecution's request to allow a gang expert to testify during the trial on the charged offenses to establish defendant's motive to avoid service.[10]  As set forth in our Statement of Facts, Detective Shear testified about defendant and Jauregui's membership in the Bounty Hunter Bloods gang, the gang's rule against cooperating with law enforcement, and the consequences of testifying against a fellow gang member.

### 2.  *Discussion*

When, as here, the jury is not being called upon to determine the truth of a gang enhancement, gang evidence may still be admitted "if it is relevant to a material issue in the case other than character, is not more prejudicial than probative, and is not cumulative."  (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1167.)  In particular, gang evidence can be offered to establish the defendant's motive to commit the charged crimes.  (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049.)  Because ""'a motive is ordinarily the incentive for criminal behavior, its probative value generally exceeds its prejudicial effect, and

---

[9]    After the jury convicted defendant, a separate trial was had on the gang enhancement.  The jury found it "not true."

[10]    The trial court explained:  "The police conduct a stop.  The defendant refuses to, from the People's point of view, submit to a detention.  He flees.  A police officer [Detective Mrakich] is assaulted, there's a battery, and there's resisting.  There's reasons why the People believe he fled or resisted or left the scene, and I'm allowing you to, essentially, bring in some of those factors."

wide latitude is permitted in admitting evidence of its existence." [Citations.]'" (*People v. McKinnon* (2011) 52 Cal.4th 610, 655.) We review the trial court's decision to permit gang evidence for a limited purpose for an abuse of discretion. (*People v. Albarran* (2007) 149 Cal.App.4th 214, 224-225.)

In this case, the gang evidence was directly relevant to explaining why defendant failed to appear at Jauregui's preliminary hearings even though he had had been served which, in turn, explained why he fled when Detective Mrakich attempted to serve him on February 13. Further, the evidence was a relatively minor component of the prosecution's case. It did not suggest that defendant's gang membership predisposed him to commit violent crimes, but, instead, focused narrowly on the People's theory as to why he had a specific reason to avoid Detective Mrakich.[11]

The trial court recognized that evidence about gangs carried a risk of undue prejudice and therefore confined the prosecution's proof to reasonable limits. At the close of trial, the court submitted the pattern limiting instruction (CALCRIM No. 303) which the jury is presumed to have followed (*People v. Mickey* (1991) 54 Cal.3d 612, 689, fn. 17). We therefore find that its decision to allow the evidence was not an abuse of discretion. (*People v. Price* (1991) 1 Cal.4th 324, 432.)

Defendant attempts to avoid this conclusion by arguing that the People overstepped the trial court's ruling by introducing evidence that the Bounty Hunter Bloods were a "'hug[e] gang' with eight to nine hundred members that regularly committed the most egregious types of assaults, including murders and attempted murders on an almost daily basis."

---

[11]     This was the only point the prosecutor made when he briefly mentioned the gang evidence in his closing argument.

The argument is forfeited because trial counsel did not object to this very brief portion of Detective Shear's testimony. (Evid. Code, § 353, subd. (a); *People v. Morris* (1991) 53 Cal.3d 152, 187-188.)

In response, defendant contends that trial counsel's failure to object constitutes ineffective assistance. Not so. If a potential objection lacks merit, counsel is not ineffective for failing to make it. (*People v. Carter* (2003) 30 Cal.4th 1166, 1210.) Here, the trial court would have overruled the objection for several reasons. First, the size and violent nature of the Bounty Hunter Bloods gang was relevant to establishing defendant's motive to avoid service of a subpoena that would require him to testify against a fellow gang member. That is, the larger and more violent the gang, the more reason for defendant to avoid service. Second, the jury had already learned about the gang's violent nature because Detective Mrakich testified that defendant had been shot by a fellow gang member with an AK-47. And third, defendant's argument (advanced for the first time in his reply brief) that the point that gang members do not want to testify against fellow gang members and therefore would evade service of a subpoena "could easily have been made with generic gang expert testimony" is not persuasive. Context is everything. Specific evidence about defendant's gang—the Bounty Hunter Bloods—was necessary for the jury to fully understand defendant's motive to avoid service of a subpoena compelling him to testify at a fellow gang member's trial.

### E. *PITCHESS* MOTION

1. *Factual Background*

Prior to trial, defendant filed a *Pitchess* motion seeking discovery of complaints filed against Detectives Mrakich and Hodge and Officers Coughlin and Kim. The trial court found that the defense had established "a plausible factual

19

scenario" to discover complaints of excessive force filed against Detective Mrakich because he had reached into defendant's car and grabbed him and complaints for dishonesty and Fourth Amendment violations filed against all four officers.

The trial court conducted an in camera hearing to review the complaints presented by the custodian of records. Following the hearing, proceedings resumed in court. The trial judge stated: "The court has ordered the disclosure of certain items one week from today."

### 2. *Discussion*

In this appeal, defendant "requests this court to independently review the sealed Reporter's Transcript[] of the in camera *Pitchess* hearing to determine whether the [trial] court properly disclosed all relevant discovery to [him]."

We have reviewed the sealed transcript and conclude that the trial court's ruling was not an abuse of discretion. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1229-1232.)

### F.  SENTENCING

### 1. *Factual Background*

The trial court sentenced defendant to a 13-year term as follows. First, it imposed the four-year midterm on the felonious assault conviction and then, pursuant to the Three Strikes law, doubled it to an eight-year term. In addition, the court imposed a five-year term pursuant to section 667, subdivision (a)(1) for the prior conviction and a concurrent one-year enhancement for the prior prison commitment pursuant to section 667.5, subdivision (b). In regard to the conviction for resisting a police officer, the trial court imposed an eight-month sentence (one-third of the midterm) but stayed its execution pursuant to section 654. The trial

20

court awarded defendant 165 days of presentence custody credit and 33 days of conduct credit.

2. *Discussion*

First, defendant contends, and the Attorney General agrees, that the trial court improperly computed his presentence conduct credit because it reduced that credit by 80 percent because of his prior conviction. The version of section 4019 in effect in 2013 when defendant committed the two crimes provided for a maximum of two days of conduct credit for every two days in actual confinement (§ 4019, subds. (d) & (h); *People v. Ellis* (2012) 207 Cal.App.4th 1546, 1549) and did not exclude defendants who had suffered convictions for serious or violent felonies. (*People v. Lara* (2012) 54 Cal.4th 896, 906, fn. 9.) The parties agree that defendant is entitled to 164 days of conduct credit.

Next, defendant contends, and the Attorney General agrees, that the concurrent one-year term imposed pursuant to section 667.5, subdivision (b) for the prior prison commitment must be stricken because it was based on the same conviction that was used to impose the five-year term pursuant to section 667, subdivision (a)(1).[12] (*People v. Perez* (2011) 195 Cal.App.4th 801, 805.)

We therefore direct preparation of an amended abstract of judgment to correct these two errors.

## G. CUMULATIVE ERROR

Lastly, defendant contends that "the cumulative unfair prejudice of the aggregate of the errors deprived [him] of due process and a fundamentally fair

---

[12]     See footnote 3, *ante*.

trial." We disagree. As explained, other than the two sentencing errors that we correct, no prejudicial error occurred.

## DISPOSITION

The portion of the judgment imposing a one-year enhancement for the prior prison commitment pursuant to section 667.5, subdivision (b) is stricken. The trial court is directed to prepare and forward to the Department of Corrections and Rehabilitation a modified abstract of judgment: (1) to reflect that change in the judgment and (2) to award 164 days of presentence conduct credit instead of 33 days. In all other respects, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P.J.



We concur:




MANELLA, J.




COLLINS, J.

22